IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JEANNIE LANGLEY,            *
                               *
     Plaintiff,           *
                               *
vs.                       * CIVIL ACTION NO. 11-00599-B
                               *
CAROLYN W. COLVIN,[1]     *
Commissioner of Social Security, *
                               *
     Defendant.          *


## ORDER

Plaintiff, Jeannie Langley (hereinafter "Plaintiff"), brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq*. On January 8, 2013, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 20). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

## I.  Procedural History

Plaintiff protectively filed an application for supplemental security income benefits on September 22, 2008. (Tr. 101).  In her application, Plaintiff alleges that she has been disabled since June 1, 2007, due to major depression and osteoarthritis.  (Id. at 63, 101).  Plaintiff's application was denied initially, and she timely filed a Request for Hearing. (Id. at 70).  On January 11, 2010, Plaintiff attended, via video conference, an administrative hearing before Administrative Law Judge D. Burgess Stalley (hereinafter "ALJ").[2]  (Id. at 10, 30). A vocational expert ("VE") also appeared at the hearing and provided testimony.  (Id. at 31).  On March 17, 2010, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled.  (Id. at 19).  Plaintiff's request for review was denied by the Appeals Council on August 24, 2011.  (Id. at 1).

The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

---

[2] Although informed of the right to representation, Plaintiff chose to appear and testify at the administrative hearing without the assistance of an attorney or other representative. (Tr. at 30-31).

II.  **Issue on Appeal**

Whether substantial evidence supports the ALJ's RFC assessment?

III. **Factual Background**

Plaintiff was born on July 4, 1951, and was fifty-eight (58) years of age at the time of the administrative hearing. (Tr. 33). Although she did not complete high school, she earned her GED. (Id. at 34). Plaintiff's last employment was as a convenience store cashier in 2007. (Id. at 34, 142). Plaintiff also worked as a park attendant at a campground from 2001 to 2007. (Id. at 40, 142). At the hearing, Plaintiff testified that she has not worked since June 1, 2007,[3] except for part-time cleaning at her church. According to Plaintiff, she was forced to quit the part-time cleaning job because it hurt her back to vacuum. (Id. at 34-35).

At the hearing, Plaintiff characterized her "major problem" as her left hip. Plaintiff testified that her hip sometimes "catches" and causes her severe pain which in turn requires her to hold onto something to avoid falling. (Id. at 35). Plaintiff testified that after such an episode, it can take two weeks for the pain to go away. (Id.). In addition, Plaintiff

---

[3] It is unclear from the record whether Plaintiff ceased working as a convenience store cashier in June 2007 or August 2007. (Tr. at 34, 142).

testified that she was seeing a mental health counselor, but she stopped because she did not feel that it was helping her and she could not afford to drive to the appointments.[4] (Id. at 37-38).  Plaintiff also provided the ALJ a list of her medications and the conditions for which they were prescribed.  The list included Lyrica (which she stated was for fibromyalgia), hydrocodone (for chronic back and hip pain), diazepam (for muscle relaxation and depression), amitriptyline (for muscle relaxation and depression), methotrexate (for arthritis), prednisone (for arthritis), and ibuprofen (for inflammation).[5] (Id. at 182).  Plaintiff testified that "[t]he medications help me a little." (Id. at 39).

IV.  **Analysis**

A.    **Standard Of Review**

In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct

---

[4] During her consultative interview with Dr. Kidd in November 2008, Plaintiff reported that she was down from smoking three packs of cigarettes a day to one pack a day. (Id. at 274).

[5] The record is devoid of any prescription logs or treatment notes from any treating physician.

legal standards were applied.[6]   Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).   A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.   Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).   The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.   Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion.").   In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision.   Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. 1999).

   **B.   Discussion**

   An individual who applies for Social Security disability benefits must prove his disability.   20 C.F.R. §§ 404.1512, 416.912.   Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically

_____

[6] This Court's review of the Commissioner's application of legal principles is plenary.   Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 CFR §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven her disability.[7] 20 C.F.R. §§ 404.1520, 416.920.

In the case *sub judice*, the ALJ determined that Plaintiff has not engaged in substantial gainful activity and that she has

---

[7] The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. Id. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

the severe impairments of arthritis, degenerative disc disease, personality disorder, and major depression.  (Tr. 12).  The ALJ next determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Id. at 12-13).

The ALJ concluded that Plaintiff retains the residual functional capacity (hereinafter "RFC") to perform medium, unskilled work, and that within that level of work, Plaintiff is limited to work which will only require her to occasionally lift/carry 50 pounds, to frequently lift/carry 25 pounds, to stand, walk, and sit for 6 out of 8 hours, to understand, remember, and carry out simple instructions, and to have infrequent contact with the general public.[8]  (Id. at 14-15).

Utilizing the services of a VE, the ALJ determined that Plaintiff is not capable of performing her past relevant work (hereinafter "PRW") as a cashier or as a park attendant.  (Id. at 17).  However, considering Plaintiff's RFC and vocational factors such as age, education, and work experience, in conjunction with the Medical-Vocational Guidelines and the VE's

---

[8]  The ALJ determined that while Plaintiff's medically determinable impairments could reasonably be expected to produce some of her alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent that they are inconsistent with the RFC assessment.  (Id. at 15).

testimony, the ALJ determined that Plaintiff is able to perform other jobs existing in significant numbers in the national economy such as janitorial work (in both light and medium positions), which is an unskilled occupation; garment bagger, which is a light, unskilled occupation; and production assembler, which is a light, unskilled occupation. (Id. at 18). Thus, the ALJ concluded that Plaintiff is not disabled. (Id.)

The relevant evidence of record reflects that on January 20, 2005, Plaintiff received an MRI of her cervical and lumbar spine at the Williamson Medical Center in Franklin, Tennessee, after complaining of neck pain. (Id. at 215-16). In the report, Dr. Michael Metzman noted that the vertical body alignment of Plaintiff's cervical spine was normal. (Id. at 215). He also noted "straining of the normal cervical lordosis from C2 through T4," and that the intervertebral discs showed normal height and hydration. (Id.). Dr. Metzman's impression was that Plaintiff had a cervical muscle spasm, a "small central protrusion at C5-6, slightly to the right of midline with thecal sac effacement and minimal flattening of the right side of the cervical cord," and no evidence of central spinal or foraminal stenosis.[9] (Id.).

---

[9] Spinal stenosis is "narrowing of the spinal column that causes pressure on the spinal cord, or narrowing of the openings (called neural foramina) where spinal nerves leave the spinal column." See http://www.nlm.nih.gov/medlineplus/ency/article/

With respect to Plaintiff's lumbar spine, Dr. Metzman noted that the vertebral body alignment was normal, and the intervertebral discs showed normal height and hydration. (Id.). Dr. Metzman's impression was: "[n]o evidence of HNP"[10] or "central spinal or significant foraminal stenosis," and "[m]ild bulges at T12-L1 through L4-5." (Id. at 216). "There is a small right annular tear [at] L4-5," "[b]orderline right and mild left foraminal stenosis at L4-5 due to bulging disc material," and "there is mild degenerative change of the facet joints at L2-3 through L4-5." (Id.).

On September 22, 2008, Plaintiff filed her application for supplemental security income benefits and reported that she had been disabled since June 1, 2007 due to major depression and osteoarthritis.[11] (Id. at 63, 101). As part of the disability determination process, the Agency referred Plaintiff to W.G. Brantley, Ph.D., for a consultative psychological examination. (Id. at 270).

---

000441.htm

[10] "HNP" in an acronym for "herniated nucleus pulposus" and is another term for "slipped disk." See http://www.umm.edu/ency/article/000442.htm

[11] Plaintiff previously filed an application for disability insurance benefits and supplemental security income benefits which was denied on March 24, 2004. (Tr. at 55-62).

On November 16, 2008, Plaintiff reported to Dr. Brantley that she has a history of drug and alcohol addiction (in full remission for five years), and that she "ha[s] difficulty relating with people." (Id. at 270). Dr. Brantley found that Plaintiff met the criteria for Personality Disorder NOS with narcissistic and some borderline features, Recurrent Major Depression in partial to full remission with no psychotic features, nicotine dependence, and alcohol dependence (remission unconfirmed). (Id.). Dr. Brantley found that Plaintiff's appearance was appropriate, that her speech was normal, that "she [was] talkative," that her mood and affect were stable with no evidence of anxiety or depression, that her cognition was normal, that her attention and concentration were unimpaired, that her memory and understanding were unimpaired, that she had normal abstract thinking, that her thought processing was normal although her "thought content [was] rather narcissistic and self-centered," that she was "cognitively and emotionally stable," and that her judgment and insight "allow for employment, especially if she maintains abstinence" from drugs and alcohol. (Id. at 270-71). Dr. Brantley further found that her cooperation, with the exception of one anomaly, was "basically within normal limits." (Id. at 271).

The Agency also referred Plaintiff to Dr. Huey Kidd for a consultative physical examination. Dr. Kidd examined Plaintiff

on November 19, 2008. Plaintiff reported that she has pain in all of her joints, as well as her feet, knees (particularly the left knee), hips (particularly the left hip), back, hands, shoulders, and neck. (Id. at 273). In addition, Plaintiff reported that she suffers from headaches and chronic depression. (Id.).

Dr. Kidd's examination of Plaintiff's head, ears, eyes, nose, throat, neck, and heart were normal. (Id.). His examination of her lungs revealed "[d]ecreased breath, sounds throughout," but "[n]o wheezing, no rales, [and] no rhonchi." (Id.). Dr. Kidd's examination of Plaintiff's extremities resulted in the following findings:

> She has full range of motion and 5/5 strength of the upper extremity, full range of motion and 5/5 strength of the lower extremity. Grip strength 5/5. She is able to heel walk, able to toe walk, able to bend and touch her toes, able to squat and stand. Deep tendon reflexes 2/4 throughout. She has a Baker's cyst palpable behind the left knee. She ambulates without any difficulty. She ambulates without a limp. She is rather slow.

(Id.). Based upon his physical examination of Plaintiff, Dr. Kidd opined that Plaintiff has "osteoarthritis" and "depression." (Id.). Dr. Kidd recommended that Plaintiff "have a full psychological evaluation," [12] and noted that "her

---

[12] As discussed above, Plaintiff had received a consultative psychological examination by Dr. Brantley on November 16, 2008.

depression could be contributing to possible disability" although "her physical impairments would not." (Id.).

On December 10, 2008, at the request of the Agency, Dr. Ellen Eno, Ph.D., completed a Psychiatric Review Technique and a Mental RFC Assessment on Plaintiff. She diagnosed Plaintiff with Major Depression in partial to full remission and Personality Disorder with narcissistic and borderline features. (Id. at 276, 279, 283, 298). Dr. Eno concluded that Plaintiff "has the ability to understand, remember, and carry out simple instructions" that her contact with the general public should be infrequent, and that her mental impairments result in "[n]o significant limitation." (Id. at 300).

Also, on December 10, 2008, a State agency disability examiner (Single Decision Maker), Ms. J. Wheeler, completed a Physical RFC Assessment on Plaintiff. (Id. at 290-97). Based on the results of the 2005 MRIs taken of Plaintiff's spine and Dr. Kidd's November 19, 2008, physical examination, Ms. Wheeler concluded that Plaintiff could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand, walk, and/or sit for about 6 hours in an 8-hour workday, and push and/or pull without any limitation. (Id. at 291). Ms. Wheeler further concluded that Plaintiff has no postural limitations, no manipulative limitations, no visual limitations, no

communicative limitations, and no environmental limitations. (Id. at 292-94).

On September 10, 2009, approximately ten months after Plaintiff's physical examination by Dr. Kidd, Plaintiff received x-rays of her left knee, lumbar spine, hips, and hands. (Id. at 302). Dr. James Courtney reported that Plaintiff's left knee showed no evidence of fracture or dislocation, that there was "mild to moderate osteoarthritic change involving the medial compartment with osteophyte formation,"[13] slight disc space narrowing, and no joint effusion. (Id.). Dr. Courtney's impression was "[m]oderate osteoarthritic change involving the left knee." (Id.).

With respect to the lumbar spine, Dr. Courtney's findings included normal alignment, diffuse[14] degenerative disc disease with osteophyte formation and slight disc space narrowing throughout the lumbar spine," and no compression fracture. (Id.). Dr. Courtney's impression was "[d]iffuse degenerative disc disease throughout the lumbar spine." (Id.).

With respect to Plaintiff's right hip, Dr. Courtney found it to be "normal in appearance." (Id.). Dr. Courtney found

---

[13]   Osteophytes are another term for bone spurs. See http://www.ncbi.nlm.nih.gov/pmc/articles/PMC2633978/

[14]   The term diffuse means "not concentrated or localized." http://www.merriam-webster.com/medlineplus/diffuse

Plaintiff's left hip to have "superior joint space narrowing with osteophyte formation." (Id.). Dr. Courtney stated that "[t]hese findings are most compatible with osteoarthritic change.  This is moderate in degree." (Id.).  His impression was "[m]oderate osteoarthritic change." (Id.).

Last, with respect to Plaintiff's hands, Dr. Courtney found normal alignment, mild osteopenia, and no evidence of significant osteophyte formation.  His impression was "[m]ild osteopenia" and a "[p]ositive ulnar variance bilaterally." [15] (Id. at 303).

### 1.   Whether substantial evidence supports the ALJ's RFC assessment?

Plaintiff argues that the ALJ's finding that she retained the RFC to perform a reduced range of medium unskilled work is not supported by substantial evidence for two reasons.  First, Plaintiff contends that the ALJ's reliance on Dr. Kidd's November 19, 2008 consultative physical examination was flawed because (a) Dr. Kidd did not obtain his own x-rays (and did not have the benefit of the x-rays later taken on September 10, 2009); and (b) Dr. Kidd did not complete a "Medical Source Statement" as to Plaintiff's functional limitations.  Second, Plaintiff argues that the ALJ's RFC assessment is not supported

---

[15] The term "ulnar variance" refers to the relative length of the ulna compared to the radius.  See http://www.ncbi.nlm.nih.gov/ pubmed/8171975.  A positive ulnar variance refers to a long ulna.  (Id.).

by substantial evidence because the ALJ improperly relied on a physical RFC assessment performed by the Single Decision Maker, a non-medical source, and did not have the benefit of a physical RFC assessment performed by a medical source.  (Doc. 14 at 3-7).

In opposition, the Commissioner counters that the ALJ's decision was not grounded solely upon the opinion of a non-medical source but, rather, was supported by substantial medical evidence including the consultative physical examination of Dr. Kidd, the consultative psychological examination of Dr. Brantley, the Psychiatric Review Technique Form and mental RFC Assessment completed by Dr. Eno, and the medical records of Plaintiff's treating physicians. (Doc. 17 at 1-3).  For the following reasons, the Court agrees with Defendant.

At the outset, the Court notes that Plaintiff's assertions of error do not involve the ALJ's findings related to Plaintiff's mental impairments (*i.e.*, personality disorder and major depression), nor does Plaintiff assert error related to the mental RFC evaluation performed by Dr. Ellen Eno, in which Dr. Eno concluded that Plaintiff has "[n]o significant limitation." (Id. at 300).  Rather, Plaintiff's assertions of error relate solely to the ALJ's RFC determination regarding her physical impairments.  Thus, the Court turns to those allegations of error.

First, the record shows, as Plaintiff points out, that the ALJ gave substantial weight to the opinion of Dr. Kidd, a consultative examining physician who opined that Plaintiff's physical impairments did not contribute to any alleged disability. (Id. at 16). While Plaintiff is correct that Dr. Kidd did not order x-rays when he examined her in November 2008, he did conduct a series of physical tests which Plaintiff performed without difficulty. (Id. at 273-74). As discussed above, upon examination, Plaintiff had a full range of motion and 5/5 strength in both the upper and lower extremities; her grip strength was 5/5; and she was able to heel walk, toe walk, bend, touch her toes, squat, and stand. (Id. at 274). Her deep tendon reflexes were normal throughout, and she was able to ambulate without difficulty and without a limp. (Id.). Given Plaintiff's superior level of performance on these tests, Dr. Kidd's decision to forego x-rays was not unreasonable.

Furthermore, Plaintiff's reliance on the 2009 x-rays is misplaced given that those x-rays, like the 2005 MRIs, fail to reveal any disabling medical condition. As discussed above, the 2005 MRIs of Plaintiff's cervical and lumbar spine show normal alignment, height, and hydration, mild degenerative changes, and no evidence of disc herniation or significant central spinal or foraminal stenosis (narrowing). (Id. at 215-16). Similarly,

the 2009 x-rays show normal alignment of the lumbar [16] spine, diffuse (non-localized) degenerative disc disease with osteophyte formation, and slight disc space narrowing throughout, with no evidence of compression fracture. (Id. at 302). In addition, they show only "moderate osteoarthritic change" in Plaintiff's left knee and left hip, a normal right hip, and "mild osteopenia" and a "[p]ositive ulnar variance" in the hands. (Id. at 302-03). Thus, Dr. Kidd's consultative physical evaluation was not flawed by the fact that he did not have the benefit of the 2009 x-rays when he examined Plaintiff in 2008.

The Court also rejects Plaintiff's contention that Dr. Kidd's consultative examination was flawed because he failed to complete a formal "Medical Source Statement" [17] of Plaintiff's functional limitations, and, consequently, the ALJ's RFC assessment was not based on substantial evidence because the record is devoid of an assessment of Plaintiff's limitations by any examining medical source. First, contrary to Plaintiff's

---

[16] The 2009 x-rays did not include views of the cervical spine. (Tr. at 302).

[17] Medical source statements are "medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can do despite a severe impairment(s), in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis." SSR No. 96-5p, 1996 SSR Lexis 2.

assertions, "the Eleventh Circuit has not set out a rule indicating that an RFC must be based on the assessment of a treating or examining physician in every case." Saunders v. Astrue, 2012 U.S. Dist. LEXIS 39571, *10 (M.D. Ala. March 23, 2012). "The ALJ's RFC assessment may be supported by substantial evidence, even in the absence of an opinion from an examining medical source about Plaintiff's functional capacity." Id. at n.5 (citing Green v. Soc. Sec. Admin., 223 Fed. Appx. 915, 923 (11th Cir. 2007) (unpublished)).

In Green, the Eleventh Circuit affirmed the district court's finding that the ALJ's RFC assessment was supported by substantial evidence where the ALJ had good cause to "devalue" the treating physician's opinion and, instead, formulated the plaintiff's RFC based on treatment records, without a physical capacities evaluation by any physician. Id., 223 Fed. Appx. at 923-24. The court noted, "[a]lthough a claimant may provide a statement containing a physician's opinion of her remaining capabilities, the ALJ will evaluate such a statement in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ." Id., 223 Fed. Appx. at 923 (citing 20 CFR §§ 404.1513, 404.1527, 404.1545); see also Packer v. Astrue, 2013 U.S. Dist. LEXIS 20580, *7 (S.D. Ala. February 14, 2013) (the fact that no treating or examining source submitted a physical capacities evaluation "does not, in and of

itself, mean that there is no medical evidence, much less no 'substantial evidence' to support the ALJ's decision."). Thus, the ALJ's RFC assessment may be supported by substantial evidence even absent an RFC evaluation by a medical source.

Second, while it is true that Dr. Kidd did not complete a Medical Source Statement in this case related to Plaintiff's functional capacity, he did assess many of Plaintiff's non-exertional limitations, such as range of motion, grip strength, upper and lower extremity strength, and ability to bend and squat, as well as some exertional limitations such as ability to walk and stand, and found Plaintiff's abilities in those respects to be without limitation.[18]   (Id. at 274).  Thus, while not as detailed as a formal Medical Source Statement, Dr. Kidd did provide an assessment of and opinion as to many of Plaintiff's physical limitations, all of which were consistent with the medical evidence in this case, including the 2005 MRIs

---

[18] "Nonexertional limitations . . . relate to limitations that affect capacities such as mental abilities, vision, hearing, speech, climbing, balancing, stooping, kneeling, crouching, crawling, reaching and the like." Saunders, 2012 U.S. Dist. LEXIS 39571, *12 n.9, 2012 WL 997222, *4 n.9 (citing Social Security Ruling 96-9P, 1996 LEXIS 6 (July 2, 1996)). "Environmental restrictions are also considered to be nonexertional limitations." (Id.). "Exertional limitations are defined as those restrictions affecting a person's ability to meet what the Social Security Administration considers the seven strength demands of a job: sitting, standing, walking, lifting, carrying, pushing, and pulling." (Id.).

and the 2009 x-rays.[19]

In addition to Dr. Kidd's assessment regarding Plaintiff's physical impairments, Dr. Eno assessed Plaintiff's mental impairments and found "[n]o significant limitation." (Tr. at 300). Dr. Eno's findings were consistent with those of Dr. Brantley.

Moreover, Plaintiff's own testimony is consistent with the ALJ's RFC assessment. As discussed above, Plaintiff testified at the administrative hearing that her "major problem" is her left hip, which "catches," causing her to have to hold onto something to avoid falling, and which causes her pain thereafter for about two weeks. (Id. at 35). Plaintiff also testified that her knee (unspecified as to left or right) gave her problems in "the early 2000s," but now "that is not as bad." (Id.). Plaintiff testified that she can bathe and dress herself, although she has difficulty wearing shoes. (Id. at 135). Additionally, Plaintiff testified that she chooses not to

---

[19] The Court recognizes that Dr. Kidd did not assess *all* of Plaintiff's exertional limitations (such as her ability to sit, lift, carry, push, and pull) (Tr. at 274). Even so, as discussed herein, the substantial evidence supports the ALJ's RFC assessment even without a full and formal RFC evaluation by a medical source. Cf. Saunders, 2012 U.S. Dist. LEXIS 39571, at *11-18 (finding insufficient evidence in the record to support the ALJ's assessment that claimant had an RFC to perform a full range of medium work where claimant's treating physician had advised her to "avoid heavy lifting," and the record was devoid of any medical opinions concerning any of her exertional or non-exertional limitations).

cook, although she is capable of preparing all of her own meals, and that she does light housekeeping and her own laundry, as well as her adult son's laundry and ironing.[20]  (Id. at 36, 136). Plaintiff also testified that she drives, shops for groceries, plants flowers (although "it is slow"), watches birds, reads, draws, and writes (although drawing and writing make her hands hurt).[21]  (Id. at 136-38).

Thus, having carefully reviewed the evidence in this case at length, the Court finds that the ALJ's RFC determination of a reduced range of medium unskilled work is supported by substantial evidence even without a formal assessment by an examining medical source of Plaintiff's exertional limitations. This is particularly true given the results of Dr. Kidd's physical examination and his opinion that Plaintiff's physical impairments were not contributing to any possible disability, and the fact that Plaintiff's medical records viewed as a whole show little impairment.

Finally, the Court agrees with Plaintiff that the ALJ erred in assigning "greater weight" to the opinion of Ms. Wheeler, a

---

[20]  Plaintiff testified that she has to rest after ironing two shirts because it makes her back hurt.  (Tr. at 36).

[21]  This evidence is consistent with Dr. Eno's findings that Plaintiff "takes care of pets, [is] able to perform self-care, prepare[s] and cook[s] meals, perform[s] light household chores, goes outside daily, drives, shops, reads, does not socialize, [and] goes to church. . . ."  (Tr. at 288).

Single Decision Maker who performed a physical RFC assessment on Plaintiff.  A single decision maker "is not a medical source and her conclusions [are] not entitled to *any* weight."  Salter v. Astrue, 2012 U.S. Dist. LEXIS 125006, *19 (S.D. Ala. September 4, 2012) (citations and  internal quotation marks omitted) (emphasis in original).  However, "reliance on an RFC assessment completed by an SDM is not always fatal."  Id.  Where, as here, "the ALJ's RFC is *otherwise supported by substantial evidence*, any reliance on a source entitled to no weight[, such as an SDM,] may be harmless error, and, if so, the Court will affirm the Commissioner's decision [if that decision] provides the necessary linkage between the RFC assessment and specific[, proper] evidence in the record bearing upon the plaintiff's ability to perform the physical, mental, sensory, and other requirements of work."  Id. at *19-20 (citations omitted) (emphasis and brackets in original).  Having found in this case that the medical evidence supports the ALJ's RFC determination even without a physical RFC assessment by a medical source, the Court finds this error to be harmless.

### V.    Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the

Commissioner of Social Security denying Plaintiff's claim for supplemental security income be **AFFIRMED.**

    **DONE** this **25th** day of **March, 2013.**

                                        **/s/ SONJA F. BIVINS**
                                **UNITED STATES MAGISTRATE JUDGE**